# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

VICTOR PEREZ, as Special
Administrator of the Estate of CARLOS
PEREZ, deceased and as Guardian Ad
Litem for S.E.P. and A.I.P.,

          Plaintiff,

    v.

STATE OF NEVADA, et al.,

          Defendants.

Case No. 2:15-cv-01572-APG-CWH

**ORDER GRANTING IN PART AND
DENYING IN PART THE
DEFENDANTS' MOTION TO
DISMISS**

(ECF No. 90)

      This action arises from the death of inmate Carlos Perez on November 12, 2014. Perez was shot with birdshot by a correctional officer while in the custody of the Nevada Department of Corrections ("NDOC") at High Desert State Prison ("HDSP"). The plaintiff is Carlos's brother, Victor Perez, on behalf of Carlos's estate and as the guardian *ad litem* to Carlos's two minor children. The plaintiff brings this action against the State of Nevada and seven NDOC employees in their individual capacities.

      The amended complaint asserts claims against all the defendants for: (1) excessive force, deliberate indifference to serious medical needs, and loss of familial association under 42 U.S.C. § 1983; (2) wrongful death; and (3) intentional infliction of emotional distress ("IIED"). ECF No. 75. The amended complaint also asserts a claim of negligent training, supervision, and retention against defendants State of Nevada; Greg Cox, former Director of NDOC; and Dwight Neven, Warden at HDSP. *Id.*

      Defendants State of Nevada, Cox, Neven, Timothy Filson (Assistant Warden at HDSP), and Ronald Oliver (Corrections Officer at HDSP) move to dismiss. The parties are familiar with the allegations and I set them out in a prior order, so I do not repeat them here. ECF No. 72. I grant in part and deny in part the defendants' motion to dismiss.

## I.    LEGAL STANDARD

A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "contain[ ] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation and citations omitted).

I apply a two-step approach when considering motions to dismiss. *Id*. at 679.  First, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id*.; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013).  Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. 678.

Second, I must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679.  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 663.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation and citation omitted).  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. ANALYSIS

### A. Section 1983 Claims[1]

To establish liability under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a right secured by the Constitution and laws of the United States, and must show that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The defendants do not contest that they acted under color of law. Thus, the dispute centers on whether they violated Carlos's constitutional rights.

The parties also dispute whether the defendants are entitled to qualified immunity. To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling on a qualified immunity defense, I consider whether the evidence viewed in the light most favorable to the nonmoving party shows the defendant's conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff has shown the defendant violated a constitutional right, I then must determine whether that right was clearly established. *Id.*

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. *Wilkins*, 350 F.3d at 955.

---

[1] The State of Nevada is not a "person" for § 1983 purposes, nor are its employees when sued in their official capacities. *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). Accordingly, the § 1983 claims against the State and the individual defendants in their official capacities are dismissed.

1        *1. Excessive Force*

2        The Eighth Amendment to the United States Constitution prohibits "cruel and unusual"

3    punishment. U.S. Const. amend. VIII. "After incarceration, only the unnecessary and wanton

4    infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth

5    Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation omitted). To establish an

6    Eighth Amendment violation based on a use of force, a plaintiff must show the amount of force

7    used was more than de minimis or otherwise involved force "repugnant to the conscience of

8    mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quotation omitted). Additionally, the

9    plaintiff must show the prison official acted with a culpable state of mind. *Wilson v. Seiter*, 501

10    U.S. 294, 298-99 (1991).

11        When an Eighth Amendment claim is based on an allegation that a prison official used

12    excessive physical force, the culpable state of mind inquiry is "whether force was applied in a

13    good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm,"

14    rather than a deliberate indifference standard. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at

15    320-21). "[P]rison administrators are charged with the responsibility of ensuring the safety of the

16    prison staff, administrative personnel, and visitors, as well as . . . the safety of the inmates

17    themselves." *Whitley*, 475 U.S. at 320 (quotation omitted). Consequently, the deliberate

18    indifference standard "does not adequately capture the importance of such competing obligations,

19    or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste,

20    under pressure, and frequently without the luxury of a second chance." *Id.* The Court considers

21    several factors in determining whether force was applied maliciously and sadistically to cause

22    harm, including:

23            (1) the extent of injury suffered by an inmate; (2) the need for application of force;
            (3) the relationship between that need and the amount of force used; (4) the threat
24            reasonably perceived by the responsible officials; and (5) any efforts made to
            temper the severity of a forceful response.
25

26    *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

27    / / / /

28

The moving defendants were not participants in either the shooting of Carlos or the transport of Carlos and the other inmate with whom Carlos got into a fight. Perez seeks to hold these defendants liable as supervisors.

There is no *respondeat superior* liability under § 1983. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). A supervisor thus is not vicariously liable for the unconstitutional acts of his subordinates. *Id.* However, that does not mean a supervisor must be physically present on the scene to be liable. *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Rather, a supervisor may be liable for his own participation in the alleged deprivation of rights, including "his own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205-06 (quotations omitted).

The amended complaint asserts three potential bases for supervisory liability: (1) the defendants ratified the conduct of the officers who transported and shot Carlos, (2) the defendants promulgated unconstitutional policies that led to Carlos being shot, and (3) the defendants were deliberately indifferent to a need to train and supervise their subordinates.

a. Ratification

The amended complaint's ratification allegations are too conclusory to support a claim. As to each supervisory defendant, the amended complaint alleges only that they ratified the unconstitutional conduct. There are no facts in support. The only fact that might be considered ratification is the allegation that Cox was terminated in part for his untimely review of the shooting incident. ECF No. 75 at 2. However, the amended complaint does not allege that Cox ratified the officers' conduct. Instead, it alleges he delayed a review. I therefore dismiss the excessive force claims against these defendants to the extent they are based on a ratification theory.

/ / / /

/ / / /

b.  Policies and Customs and Deliberate Indifference

A supervisor may be liable if he "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy," and enforcement of that policy results in the violation of the plaintiff's constitutional rights. *OSU Student All.*, 699 F.3d at 1076 (quotation omitted).  The amended complaint alleges that each of the supervisory defendants promulgated two policies or practices that led to Carlos being shot: (1) the encouragement of unnecessary use of shotguns loaded with birdshot on unarmed inmates as the primary means of controlling inmates when lesser means of force were available and (2) the custom of using "pitch and catch" to transfer protective custody inmates instead of individually escorting them.  The amended complaint alleges that Carlos was shot during a "pitch and catch" gone awry and was shot unnecessarily when neither inmate posed a significant threat to each other or to anyone else.

These allegations are plausible in light of the report prepared by the Association of State Correctional Administrators, which conducted an investigation into the use of shotguns in Nevada prisons. ECF No. 90-1.[2]  That report indicated that due to NDOC "operat[ing] at very low staffing levels, it relies heavily on the use of shotguns to protect inmates and staff from harm," the low staffing levels put NDOC "in the position of relying heavily and almost exclusively [on] the use of weapons to maintain order," and the use of a shotgun loaded with birdshot "has long been the primary means of controlling inmates." *Id.* at 13-14, 19.  A reasonable inference from the practice's alleged pervasiveness and the fact that it results from low staffing levels is that the defendants were aware of it. *See Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000) (stating a reasonable jury could find that evidence of pervasive and long-running campaign of retaliation showed the acts were "inflicted by members of the Department with the knowledge and tacit connivance of those running the Department").   The amended complaint thus

---

[2] The defendants request that I consider this report at the motion to dismiss stage.  The plaintiff does not object.  Although it is not clear that the document is central to the plaintiff's claim, the amended complaint refers to the report and cites many of the report's finding as allegations in support of the claims.  Neither party disputes the report's authenticity.  I therefore will consider it without converting the motion to dismiss into one for summary judgment. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011).

adequately alleges the supervisory defendants promulgated policies or practices that were the moving force behind Carlos's death.

Although the amended complaint states a claim based on these customs or practices, the defendants are entitled to qualified immunity with respect to the "pitch and catch" practice. Perez does not identify any clearly established law that would put the defendants on notice that "pitch and catch" would violate an inmate's constitutional rights. While it may not be consistent with best practices, Perez does not identify law that would put the defendants on notice that it was not just unwise, but also unlawful.

However, the same cannot be said for the alleged policy of encouraging correctional officers to use potentially lethal force as a method of first resort even in non-deadly-force situations. It has long been clearly established that in the prison context, an Eighth Amendment excessive force claim turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (quotation omitted). The question is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* at 321. The factors to consider to make this determination include "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Id.* (quotation omitted).

The amended complaint alleges that regardless of the need to use lethal force, correctional officers were encouraged to start with birdshot, a potentially lethal response. This plausibly alleges that the custom was not a good faith effort to maintain order but was wanton with respect to unjustifiably inflicting harm. A reasonable official would know that a use of force custom that encourages deadly force as a first resort, even when unnecessary, violates the law.

The defendants rely on an unpublished Ninth Circuit opinion, *Carpino v. Demosthenes*, to argue they were not on notice that use of birdshot may be unconstitutional. 37 F.3d 1504 (9th Cir. 1994). However, *Carpino* held only that in a particular case, a correctional officer did not violate

the Eighth Amendment by using bird shot to break up an inmate fight that raised an "immediate threat of serious injury." *Id.* at *1. *Carpino* did not address whether the systematic encouragement of using birdshot on unarmed inmates as the primary means of controlling them, even in non-deadly-force situations, is constitutional. I therefore deny qualified immunity in relation to the alleged policy or practice of encouraging resort to birdshot as the primary means of controlling inmates even in non-deadly-force situations.

### c. Deliberately Indifferent to Need to Train and Supervise

A "prison official in a supervisory position may be held liable under § 1983 if he was personally involved in the constitutional deprivation or a sufficient causal connection exists between his unlawful conduct and the constitutional violation." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013). This causal connection can be shown through evidence of the supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates." *Id.* (quotation omitted). Taking as true the allegation that the defendants promulgated the custom of shooting first regardless of whether deadly force was warranted, the amended complaint adequately alleges the defendants are culpable for training and supervising their subordinates to resort to deadly force even when unnecessary. For the same reasons as discussed above, the defendants are not entitled to qualified immunity on this theory of liability.

### 2. Deliberate Indifference to Serious Medical Needs

To "prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show deliberate indifference to his serious medical needs." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation omitted). The plaintiff must allege facts that (1) "the deprivation was serious enough to constitute cruel and unusual punishment" and (2) the defendant was deliberately indifferent. *Id.* (quotation omitted). A prison official is deliberately indifferent "only if the official knows of and disregards an excessive risk to inmate health and safety." *Id.* (quotation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotation omitted). Deliberate indifference "may appear when prison officials deny, delay or

intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quotation omitted).

The amended complaint adequately alleges defendant Oliver was deliberately indifferent to Carlos's serious medical needs. The amended complaint alleges that Carlos was shot multiple times with a shotgun and was bleeding profusely. ECF No. 75 at 8, 12-13. The amended complaint also alleges Oliver was deliberately indifferent to Carlos's serious medical needs because it alleges Oliver responded to the scene and spoke with the officer who shot Carlos rather than attend to Carlos. *Id.* at 17. The defendants' argument that medical staff arrived within five minutes and thus Oliver was not deliberately indifferent is a question of fact not suitable to resolution at the dismissal stage.

However, there are no facts supporting a deliberate indifference claim against the other supervisory defendants. There are no allegations that any of these defendants responded to the scene or were even aware that Carlos needed medical attention. Nor are there any facts supporting a supervisory claim against them. To the contrary, the amended complaint suggests that this was a one-off situation because it alleges that other inmates who have been injured at HDSP have been flown to the hospital by helicopter. ECF No. 75 at 17. Thus, there are no facts alleged to support ratification, a policy or practice, or a failure to train or supervise with respect to providing adequate medical care. I therefore grant the defendants' motion on this claim as to defendants Cox, Neven, and Filson. I deny the motion as to defendant Oliver.

### 3. Familial Association

The defendants do not move to dismiss the familial association claim. I therefore do not address it.

### B. Wrongful Death

Nevada Revised Statutes § 41.085(2) provides a cause of action "[w]hen the death of any person . . . is caused by the wrongful act or neglect of another . . . ." As discussed above, the amended complaint plausibly alleges theories by which the defendants may be said to have

caused the death of Carlos through their alleged wrongful acts. I therefore deny the motion to dismiss this claim.

### C. Negligent Training and Supervision[3]

"In Nevada, a proprietor owes a general duty to use reasonable care to keep the premises in a reasonably safe condition for use." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). The employer "has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Id.*

As discussed above with respect to the § 1983 claim, the amended complaint adequately alleges that the defendants trained their subordinates to use deadly force even in non-deadly-force situations. Further, under a negligence standard, the amended complaint also adequately alleges that lesser means of force were available to control inmates yet the defendants did not train their employees to use implements like tasers or batons instead of a shotgun loaded with birdshot.

Additionally, although the "pitch and catch" practice could not support a § 1983 claim, it can support a state law negligent supervision claim because there is no state law requirement that clearly established law put the defendants on notice that their conduct was unlawful. The amended complaint adequately alleges that the "pitch and catch" practice was against NDOC's official policy but was so widespread as to be the norm at HDSP. ECF No. 75 at 7-8, 11, 14. A reasonable inference from the practice's alleged pervasiveness is that the defendants were aware of it. *See Blair*, 223 F.3d at 1079. Yet defendants did not train or supervise their subordinates to cease engaging in the procedure which allegedly allowed Carlos and the other inmate to be in close proximity. That close proximity allegedly led to a scuffle between the inmates and an overreaction by the guards on duty to shoot and kill Carlos. The amended complaint plausibly alleges the defendants were negligent in this respect and that the negligence was a proximate cause of Carlos's death. I therefore deny the motion to dismiss this claim.

---

[3] The plaintiffs also refer to negligent retention, but there is no allegation that any of the supervisory defendants had reason to suspect the other defendants were not fit for their jobs. I therefore dismiss the claim for negligent retention.

**D. Intentional Infliction of Emotional Distress**

Under Nevada law, an intentional infliction of emotional distress claim requires three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted). However, "persons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." *Id.* (omission and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

The Supreme Court of Nevada has referred to the Restatement (Second) of Torts § 46 as relevant authority for IIED claims under Nevada law. *See, e.g.*, *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980). That section does not refer specifically to prison officials, but the comments state that a police officer's conduct may rise to the level of extreme and outrageous when he engages in an "extreme abuse" of his position. Restatement (Second) of Torts § 46, cmts. The comments offer examples of when a police officer's conduct may be so outrageous as to support an IIED claim, such as where the officer attempts to extort money by a threat of arrest or attempts to extort a confession by falsely telling the accused her child has been injured in an accident and she cannot go to the hospital until she confesses. *Id.* "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

The defendants' alleged practice of "pitch and catch" is not extreme and outrageous. It is not such an extreme abuse of correctional officers' power over inmates that it would fall within Nevada's IIED claim.

However, reasonable minds could differ about whether the alleged practice of encouraging correctional officers to use birdshot as a primary means of controlling inmates, even when deadly force is not warranted, is extreme and outrageous and with reckless disregard for whether that would cause emotional distress. As discussed above, there are adequate allegations that the defendants' custom and practice was a proximate cause of Carlos's death. I therefore deny the defendants' motion to dismiss this claim.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **(ECF No. 90) is GRANTED in part and DENIED in part**. The plaintiff's claims under 42 U.S.C. § 1983 are dismissed with prejudice against defendant State of Nevada and defendants Greg Cox, Dwight Neven, Timothy Filson, and Ronald Oliver in their official capacities. The plaintiff's 42 U.S.C. § 1983 claim for excessive force is dismissed against defendants Greg Cox, Dwight Neven, Timothy Filson, and Ronald Oliver in their individual capacities to the extent it is based on a ratification theory or on "pitch and catch." The plaintiff's 42 U.S.C. § 1983 deliberate indifferent to medical needs claim against defendants Greg Cox, Dwight Neven, and Timothy Filson in their individual capacities is dismissed. The negligent retention claim is dismissed. Finally, the plaintiff's intentional infliction emotional distress claim is dismissed to the extent it is based on "pitch and catch."

DATED this 20th day of September, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE